UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ESTATE OF MADISON MILLER,**
**by and through Rita Miller and**
**Jerame Miller as co-personal**
**representatives of the estate,**
**CORI MILLER, RITA MILLER,**
**JERAME MILLER,**

                         **Plaintiffs,**

-vs-                                              Case No.  6:07-cv-1358-Orl-19DAB

**TOYOTA MOTOR CORP., THRIFTY**
**RENT-A-CAR SYSTEM, INC.,**
**JOHN DOE MANUFACTURER**

                         **Defendants.**

_____

## ORDER

This case comes before the Court on the following:

1. Motion of Defendant, Toyota Motor Corporation, to Dismiss Plaintiffs' First Amended Complaint Pursuant to F.R.C.P. 12(b)(2) and/or 12(b)(3), or in the Alternative, For Forum Non Conveniens and Memorandum of Law in Support Thereof (Doc. No. 36, filed Dec. 12, 2007);

2. Motion of Defendant, Toyota Motor Corporation, and Request for Judicial Notice and Notice of Intent to Rely Upon Affidavit of D'Arcy-Donnelly (Doc. No. 37, filed Dec. 12, 2007);

3. Request of Defendant, Toyota Motor Corporation, for Oral Argument Regarding Its Motion to Dismiss Plaintiffs' Complaint (Doc. No. 38, filed Dec. 12, 2007);

4. Opposition of Plaintiffs to Toyota's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and/or 12(b)(3), and for Forum Non Conveniens (Doc. No. 47, filed Dec. 26, 2007);

5. Declaration of Defendant, Toyota Motor Corporation, of Amenability and Voluntary Submission to Jurisdiction of South African Courts (Doc. No. 49, filed Dec. 28, 2007);

6. Notice of Filing of Defendant, Toyota Motor Corporation, and Intent to Rely Upon List of Witnesses Located in South Africa Set Forth in Plaintiffs' Initial Disclosures (Doc. No. 52, filed Jan. 22, 2008); and

7. Defendant Toyota Motor Corporation's Notice of Supplemental Authority (Doc. No. 54, filed Jan. 23, 2008).

**Background**

This case arises from a car accident in South Africa which led to the death of nine-year old Madison Miller. (Doc. No. 8, filed Oct. 1, 2007, at ¶¶ 13-23.) After the accident, her parents filed this suit against Toyota Manufacturing Corp. ("TMC"), Thrifty Rent-a-Car System, Inc. ("Thrifty"), and an unnamed manufacturing corporation. Toyota now moves for dismissal of the claims against it, arguing that this Court lacks personal jurisdiction over it and that the case should be dismissed on grounds of *forum non-conveniens*. (Doc. No. 36 at 1.)

**A.    Parties to the Action**

Before her death, Madison Miller was a resident of London, Ohio. (Doc. No. 8 at ¶ 1.) Her mother, Rita Miller, is a resident of Marion, Ohio.[1] (*Id.* at ¶ 4.) Her father, Jerame Miller, currently

---

[1] Rita Miller moved to Florida after the Complaint was filed. (Doc. No. 16, filed Nov. 5, 2007, at 3.) The Complaint does not specify where Cori Miller lives.

lives in Jupiter, Florida. (*Id.* at ¶ 5.) Jerame and Rita Miller are administering the Estate of Madison Miller under Ohio law. (*Id.* at ¶ 2.)

Defendant TMC is a Japanese corporation with its principal place of business in Japan. (Doc. No. 36-2 at 2-3.) It is one member of an international family of corporations that produce and market Toyota brand vehicles throughout the world. According to the affidavit of one of its employees, TMC "designs, manufactures, and developmentally tests Toyota motor vehicles in the ordinary course of its business." (*Id.* at 2.) TMC does not sell or import vehicles to Florida, or even to the continental United States. (*Id.*) Rather, TMC's operations appear to be focused on designing vehicles for markets in Asia and Africa. (*Id.* at 4.) TMC receives less than one percent of its total revenue from the State of Florida, and TMC is not registered to do business in Florida. (*Id.* at 3-4.)

The Toyota brand's presence in the United States is facilitated by several domestic corporations, none of which are named as parties to this litigation. (*See* Doc. No. 47-4 at 4 ; Doc. No. 47-5 at 2; Doc. No. 47-6 at 2.) Toyota Motor North America ("TMA") is a California corporation and serves as the "North American subsidiary" of TMC. (Doc. No. 47-3 at 2.) In this capacity, TMA acts as a holding company for Toyota's "North American sales, engineering and manufacturing operating units." (*Id.*) TMA maintains offices in New York City, Washington, DC, and Miami, Florida, and it is registered as a for-profit corporation in the State of Florida. (*Id.*; Doc. No. 47-5 at 2.)

One of TMA's primary holdings is Toyota Motor Sales, U.S.A., Inc. ("TMS"). TMS is the "exclusive importer of Toyota motor vehicles in the continental United States" and directly distributes vehicles to several regional markets. (Doc. No. 36-3 at 2.) According to the affidavit of a TMA employee, distribution of Toyota vehicles in the State of Florida is conducted by a

"privately owned company." (*Id.*) As a separately-incorporated entity, TMS maintains its own corporate books, financial records, holds its own bank accounts and files its own tax returns. (*Id.* at 3.) TMS maintains a separate board of directors from TMC, although members of the TMC board of directors have concurrently served as TMS officers. (*Id.*; Doc. No. 47-4 at 2; Doc. No. 47-5 at 2; Doc. No. 47-6 at 2; Doc. No. 47-7 at 3.) TMS receives no instructions from TMC regarding the design, manufacture, or testing of vehicles, and TMS personnel direct the day-to-day operations of TMS. (Doc. No. 36-3 at 3.) TMS is incorporated in California and is registered as a for-profit corporation in Florida. (Doc. No. 47-6 at 2.)[2]

### B.     The Accident

On October 3, 2005, the Millers were traveling on Route 62 near Uniondale, South Africa, in a rented Toyota Condor sport utility vehicle. (Doc. No. 8 at ¶¶ 13, 15.) Jerame Miller was the driver. (Doc. No. 16 at 3.) While traveling at typical highway speeds, the brake drum on the left rear of the Condor suddenly malfunctioned and seized, causing the vehicle to swerve and enter an uncontrollable spin. (Doc. No. 8 at ¶ 16.) The Condor then flipped, left the roadway, and struck a pole. (*Id.* at ¶ 17.) The entire family was knocked unconscious and awoke on the side of the road suffering from multiple injuries. (*Id.* at ¶ 18.) Madison, receiving particularly serious injuries, was evacuated from the scene by a Red Cross helicopter. (*Id.* at ¶ 19.) Later that day, the helicopter crashed into a mountain, killing Madison and the entire crew. (*Id.*)

The parties agree that the Condor was designed, manufactured, and distributed by TMC, and not by TMS or any other American Toyota affiliate. (Doc. No. 8 at ¶ 14; Doc. No. 36 at 2.)

---

[2]     Toyota Motor Credit Corporation (TMCC) is another Toyota-affiliated corporation authorized to do business in Florida. (Doc. No. 47-7 at 2.)

Plaintiffs allege that TMC negligently designed, inspected, and assembled the vehicle. (Doc. No. 8 at ¶¶ 24-27.) Plaintiffs make the same allegations against "John Doe Corporation," although it is unclear which design elements Plaintiffs attribute to the unnamed corporation. (*Id.* at ¶¶ 28-31.) Plaintiffs also allege that Thrifty, a car rental firm, was negligent for failing to use reasonable care in selecting and providing a safe vehicle for consumers to rent. (*Id.* at ¶¶ 32-35.)

## Standard of Review

The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. *Stubbs v. Wyndham v. Nassau Resort & Crystal Palace*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Meier*, 288 F.3d at 1269) (citations and internal quotations omitted). When the defendant "submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* Where conflicts exist between the various affidavits, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.*

## Analysis

**A.     Statutory Requirements for Personal Jurisdiction**

In a diversity case, personal jurisdiction over a defendant must be authorized by the law of the state in which the federal court sits and be consistent with the Federal Constitution. *Id.* Thus, the first question in this case is whether TMC's activities are sufficient to subject it to personal jurisdiction under Florida's long-arm statute. *Id.*

As a conceptual matter, personal jurisdictional can arise either "specifically or generally" from a defendant's contacts with the forum state. *Id.* at 1360 n.3. General jurisdiction arises from contacts with the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on activities in the forum that are related to the cause of action at issue. *Id.* Thus, if a defendant is subject to the general jurisdiction of the court, the defendant must respond in that court to any cause of action, regardless of where the cause of action arose. *Id.* This distinction between general and specific jurisdiction plays an important role in both the statutory and constitutional limits on personal jurisdiction. *See id.*

In this case, Florida's long-arm statute provides ten grounds on which personal jurisdiction may asserted over a non-resident defendant. Fla. Stat. § 48.193 (2007). Eight of these grounds are examples of "specific jurisdiction," requiring the cause of action to "aris[e]" out of particular acts of the defendant which are connected in some way to the state of Florida. *Id.* § 48.193(1)(a)-(h). The tenth ground for jurisdiction applies only when the defendant has waived its jurisdictional challenge by asserting a counter-claim. *Id.* § 48.193(4). The ninth ground provides jurisdiction over "a defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise . . . whether or not the claim arises from that activity." *Id.* §48.193(2). Thus, subsection (2) allows the district court to assert "general" personal jurisdiction over a defendant "who has substantial and not isolated activity within Florida, even when that activity is unrelated to the cause of action being litigated." *Stubbs*, 447 F.3d at 1361 (internal quotations and citations omitted).[3] The Florida Supreme Court has construed subsection

---

[3] The "substantial and not isolated activity" requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic (continued...)

(2) to provide jurisdiction when the actions of the defendant, "considered collectively[,] . . . show a general course of business activity in the State for pecuniary benefit." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975)).

**B.     Application of Florida's Long-Arm Statute**

The facts of this case do not implicate the long-arm statute's grounds for asserting specific jurisdiction, *see* Fla. Stat. § 48.193(1)(a)-(h), and TMC has not asserted a counterclaim against Plaintiffs. As a result, only the ninth ground for jurisdiction applies, and Plaintiffs must therefore prove that general jurisdiction exists over TMC because of its "substantial and not isolated activity within" Florida. Plaintiffs attempt to do so through evidence of (1) TMC's direct contacts with Florida and (2) the activities of TMC's American subsidiaries.

Both a corporation's direct contacts and the contacts of its subsidiaries are relevant to the existence personal jurisdiction under section 48.193(2). *See Stubbs*, 447 F.3d at 1361-63 (aggregating the direct and subsidiary-related contacts of a non-resident corporation). However, the actions of a subsidiary are not automatically attributed to the parent corporation. *Id.* at 1362. The subsidiary's actions will be attributed to the parent only when "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity . . . ." *Id.* (quoting *Meier*, 288 F.3d at 1272); *see also Consol. Development Corp. v. Sherrit, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000). The Eleventh Circuit has further explained that the district court may "may extend

---

³(...continued)
contact requirement for general jurisdiction under the Fourteenth Amendment's Due Process Clause. *Stubbs*, 447 F.3d at 1363 n.7.

jurisdiction to any foreign corporation where the affiliated domestic corporation manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation." *Stubbs*, 447 F.3d at 1362.  One specific test asks whether the nonresident corporation would perform the equivalent services if its domestic subsidiaries did not exist. *Id.* at 1363 (citing *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 95 (2d Cir. 2000)).

Plaintiffs assert that TMC has established direct contacts with Florida in two ways.  (Doc. No. 47 at 6.)  First, in its answer to an unrelated 2006 lawsuit, TMC admitted that "TMC is a foreign corporation for profit authorized to do business in the State of Florida and Toyota Motor Sales, U.S.A., Inc. is a foreign corporation for profit." (*Id.*; Doc. No. 47-10 at 3.)  Second, Plaintiffs point to several TMA press releases which state that "Toyota (NYSE:TM) established operations in North America in 1957."[4]   (Doc. No. 47 at 6 (citing Doc. No. 47-2 at 2; Doc. No. 47-3 at 2).)

Plaintiffs primarily argue that TMC is subject to personal jurisdiction by virtue of its subsidiaries' contacts with Florida.   (*Id.* at 8-9.)  According to Plaintiffs, the "various Toyota branches that have filed with the Florida Secretary of State are essentially the same company" because they share some of the same officers with each other and with TMC. (*Id.* at 9.)  Due to this connection, Plaintiffs assert that "the Japanese parent actually controls all of its subsidiary corporations through shared management personnel." (*Id.*)  Plaintiffs also point out that TMC's affidavits do not "deny that TMS is Toyota's agent." (*Id.*)

TMC argues that it lacks sufficient contacts with the forum to enable the Court to exercise general jurisdiction.  TMC emphasizes that it: (1) is located in Japan; (2) does not sell or design vehicles for United States markets or Florida in particular; (3) does not engage in any promotion of

---

[4]   In the press releases, the labels "Toyota" and "TM" appear to refer to TMC.

vehicles in Florida; (4) "has never conducted or negotiated business in Florida"; (5) does not have an agent for service of process and is not licensed to do business in Florida; (6) does not have a bank account in Florida; and (7) has never maintained a sales force in Florida. (Doc. No. 36 at 9-10, 15.) TMC further contends its subsidiaries operate as independent corporations, meaning that their contacts cannot be imputed to TMC. (*Id.* at 11-15.)

Viewing the evidence in the aggregate, the Court concludes that TMC's contacts are insufficient to rise to the level of "substantial and not isolated activity" within Florida. To begin, the evidence concerning TMC's direct contacts with Florida provides little support for Plaintiffs' position. TMC's purported "admission" in another case that it is authorized to do business in Florida does not prevent TMC from contesting personal jurisdiction in this case.[5] More importantly, even if the statement is taken as accurate, it does not specify the extent of TMC's business activities in Florida. (*See* Doc. No. 47-10 at 3.) Thus, this sentence gives no basis to infer that TMC engages in a "general course of business activity" in Florida. *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975). Plaintiffs' reliance on the TMA press releases is similarly unavailing. The press releases state that "Toyota" has done business in North America. (*See* Doc. No. 47-2 at 2; Doc. No. 47-3 at 2.) These documents appear to have been prepared for the benefit of investors, not lawyers concerned with the nuances of corporate structure. The press releases do

---

[5] The doctrine of judicial estoppel applies only to conflicting positions taken in the same case. *See*, *e.g.*, *In re Cummings*, No. 07-80598-CIV-GOLD/TURNOFF, 2007 WL 4800642, at *11 (S.D. Fla. Nov. 27, 2007). The doctrine of issue preclusion applies only to matters that were actually litigated and decided by a court. *See*, *e.g.*, *Cooper v. F.A. Management Solutions, Inc.*, No. 8:06-CV-751-T-27MAP, 2007 WL 4326800, at *5 (M.D. Fla. Dec. 7, 2007).

not break down operations according to corporate entity or geographic area. Thus, it does not necessarily follow from such an imprecise statement that TMC has engaged in "substantial and not isolated" activity within Florida.

On the other hand, TMC has presented evidence that it maintains virtually no contact with the State of Florida.[6] (Doc. No. 36-2; Doc. No. 36-3.) TMC's only contact with Florida appears to be the less than 1% of its revenue which originates from sales within Florida, and even this money has first passed through several Toyota subsidiary corporations. (Doc. No. 36-2 at 3.)

Moreover, Plaintiffs have not established reason to impute the contacts of these subsidiaries to TMC. The evidence demonstrates that TMS, TMA, and TMCC maintain separate corporate identities. These corporations observe corporate formalities and direct their own day-to-day operations. Plaintiffs rely heavily on the fact that several subsidiary-corporation officers are connected to TMC in some capacity. (*See* Doc. No. 47 at 9.) However, this connection alone does not establish that these corporations "function[] solely to achieve the purpose of the dominant corporation." *Stubbs*, 447 F.3d at 1362. In today's marketplace, representatives of a parent corporation often directly participate in the management of the subsidiary. *See*, *e.g.*, *In re Prop. Corp. Shareholders Litig.*, 896 A.2d 169, 176 (Del. Ch. 2005) (discussing the propriety of transactions between a subsidiary and parent when the subsidiary's board is controlled by the parent

---

[6] Plaintiffs argue that the affidavits submitted in support of Defendant's motion are conclusory and therefore should not be afforded credence. (Doc. No. 47 at 7.) According to the Eleventh Circuit, when "the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." 447 F.3d at 1360. Although scant on detail, the affidavits in this case contain more than assertions that TMC is not subject to jurisdiction. For example, the affidavit of Katsumi Ikeda recites twenty-four paragraphs of facts that are relevant to the jurisdictional analysis. (Doc. No. 36-2 at 2-4.)

corporation). The mere intermingling of officers and directors does not imply that one corporation acts as a puppet of the other.

Finally, Plaintiffs have not presented any evidence suggesting that TMC would perform the activities of its American subsidiaries in their absence. The cases which have found personal jurisdiction under this test involved fact patterns where a domestic corporation acts as the foreign corporation's agent by performing a particular task in the domestic market on behalf of the foreign corporation. *See*, *e.g.*, *Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (customer relations office for the foreign corporation). Usually this service allows the foreign corporation to extend its business into the United States through the domestic agent. *See id.* By contrast, the Toyota subsidiaries have constructed their own extensive marketing and distribution system in the United States. Both practical and legal considerations suggest that a corporation in TMC's position is best served by assigning these tasks to a group of domestic corporations rather than performing them directly.[7] Thus, there is no reason to conclude that TMC would simply step in and perform these activities on its own if the American subsidiaries ceased to exist. Furthermore, there is no evidence suggesting that the American subsidiaries act as an agent for TMC to extend its own business into the United States. Indeed, these corporations turn a profit for TMC, but they do so as corporations paying dividends to the shareholder, not as agents acting for the master. (*See* Doc. No. 36-2; Doc. No. 36-3.)

---

[7] State and federal laws sometimes give domestic subsidiaries more favorable treatment than their foreign parent corporations. For example, domestic subsidiaries of foreign corporations may establish political action committees while foreign corporations may not do so directly. Jan Witold Baran, *Political Contributions and Expenditures by Corporations*, 1624 Prac. Law. Inst. Corp. 59, 180-81 (2007).

Accordingly, Plaintiffs have not satisfied their burden to establish a prima facie case of personal jurisdiction.[8] TMC's direct contacts with Florida are scant, and its subsidiaries are sufficiently independent to preclude imputing their contacts to TMC. The Florida long-arm statute requires a showing of "substantial and not isolated" activity within the state. Plaintiffs' evidence is insufficient as a matter of law to meet this standard. *See Stubbs*, 447 F.3d at 1360 (Plaintiffs must present enough evidence to survive a hypothetical motion for a "directed verdict").[9]

## Conclusion

The Court **GRANTS** the Motion of Defendant, Toyota Motor Corporation, to Dismiss Plaintiffs' First Amended Complaint Pursuant to F.R.C.P. 12(b)(2) and/or 12(b)(3), or in the Alternative, For Forum Non Conveniens and Memorandum of Law in Support Thereof (Doc. No. 36, filed Dec. 12, 2007). The Motion of Defendant, Toyota Motor Corporation, and Request for Judicial Notice and Notice of Intent to Rely Upon Affidavit of D'Arcy-Donnelly (Doc. No. 37, filed Dec. 12, 2007) and the Request of Defendant, Toyota Motor Corporation, for Oral Argument Regarding Its Motion to Dismiss Plaintiffs' Complaint (Doc. No. 38, filed Dec. 12, 2007) are

---

[8] Plaintiffs make several requests for jurisdictional discovery in their opposition to TMC's motion. (*See*, *e.g.*, Doc. No. 47 at 1-2.) Under Local Rule 3.01(a), requests for relief must be made in the form of a motion and not buried in a response to another party's motion. *See*, *e.g.*, *Pine v. Bd. of County Comm'r of Brevard County*, No. 6:06-cv-1551-Orl-19JGG, 2007 WL 865593, at *1 (M.D. Fla. Mar. 21, 2007). Moreover, jurisdictional discovery is not freely granted, and a party seeking jurisdictional discovery should ordinarily specify the nature of evidence it seeks. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999). This heightened standard is consistent with the rationale underlying the concept of personal jurisdiction, that due process of law prevents a defendant from being forced to litigate in a forum with which the defendant has little or no connection.

[9] Because the Court lacks personal jurisdiction over TMC, it is unnecessary to determine whether dismissal is appropriate under the doctrine of *forum non conveniens*.

**DENIED** as moot. The claims against Defendant Toyota Motor Corporation are dismissed without prejudice for lack of personal jurisdiction.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 22, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record