**ESTATE OF MADISON MILLER,**
**by and through Rita Miller and Jerame Miller**
**as co-personal representatives of the estate,**
**CORI MILLER, RITA MILLER,**
**JERAME MILLER,**

                      **Plaintiffs,**

-vs-                                               **Case No.  6:07-cv-1358-Orl-19DAB**

**THRIFTY RENT-A-CAR SYSTEM, INC.,**
**JOHN DOE MANUFACTURER,**

                      **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1. Notice of Defendant Thrifty Rent-A-Car System, Inc. ("Thrifty") of Designation of *Fabre* Defendants (Doc. No. 106, filed Dec. 1, 2008);

2. Motion of Plaintiffs to Strike the Notice of Designation of *Fabre* Defendants (Doc. No. 108, filed Dec. 5, 2008);

3. Motion of Thrifty to Amend/Correct the Answer to the Complaint (Doc. No. 109, filed Dec. 15, 2008);

4. Response of Plaintiffs to the Motion of Thrifty to Amend/Correct the Answer to the Complaint (Doc. No. 110, filed Dec. 15, 2008);

5. Notice of Thrifty of Intent to Raise the Applicability of South Africa Law (Doc. No. 112, filed Dec. 19, 2008);

6. Response of Thrifty to Motion of Plaintiffs to Strike the Notice of Designation of *Fabre* Defendants (Doc. No. 114, filed Dec. 19, 2008);

7. Consent Motion of Plaintiffs for Leave to File Reply to Defendant's Opposition to Motion to Strike (Doc. No. 117, filed Dec. 23, 2008);

8. Notice of Thrifty of Filing the Statement of Bedver John Henry Irving in Support of Thrifty's Notice of Intent to Raise Applicability of the Law of South Africa (Doc. No. 118, filed Dec. 24, 2008);

9. Order Requiring Submission of Briefs Concerning the Issue of Choice of Law (Doc. No. 121, filed Jan. 12, 2009);

10. Amended Answer and Affirmative Defenses of Thrifty (Doc. No. 126, filed Jan. 23, 2009);[1]

11. Supplemental Brief of Thrifty Regarding Choice of Law (Doc. No. 127, filed Jan. 26, 2009);

12. Notice of Thrifty of Filing Report of Winston P. Nagan, FRS, in Support of Thrifty's Supplemental Brief (Doc. No. 129, filed Jan. 26, 2009);

13. Motion of Thrifty to Apply the Law of South Africa (Doc. No. 130, filed Jan. 26, 2009);

14. Response of Plaintiffs in Opposition to Motion of Thrifty to Apply the Law of South Africa (Doc. No. 154, filed Feb. 25, 2009);

15. Motion of Thrifty for Leave to File Reply to Plaintiffs' Response (Doc. No. 160, filed Feb. 27, 2009);

16. Response of Plaintiffs in Opposition to Motion of Thrifty for Leave to File Reply to Plaintiffs' Response (Doc. No. 162, filed Feb. 27, 2009); and

---

[1] Thrifty filed this document without leave of the Court or consent by Plaintiffs.

17.     Supplemental Motion of Thrifty for Leave to Amend Answer and Affirmative Defenses to Include *Fabre* Defendants Identified Through Recent Discovery (Doc. No. 166, filed Mar. 23, 2009).

## Background

## I.     Procedural History

The series of Motions, Responses, and Notices before the Court concerns the intent of Defendant Thrifty, a car rental service, to raise an affirmative defense to the claim of liability for a car accident that occurred in South Africa.  Specifically, Thrifty relies on the Florida Supreme Court's decision in *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993), to designate twelve parties which it believes are wholly or partially responsible for the negligence alleged.  (Doc. No. 106; Doc. No. 166.)  The traditional common law rule in the United States is joint and several liability, whereby each defendant found liable could be required to pay for one-hundred percent of the plaintiff's injury at the plaintiff's election, provided that the plaintiff could never recover more than the full amount of his or her damages.  *Fabre*, 623 So. 2d at 1184-85; Black's Law Dictionary 933 (8th ed. 2004). In *Fabre*, the Florida Supreme Court created an affirmative defense that allows named defendants to apportion liability to non-parties termed *Fabre* defendants, thus abrogating the common law rule. *Fabre*, 623 So. 2d at 1185-87 ("[S]ection 768.81 [of the Florida Statutes] was enacted to replace joint and several liability with a system that requires each party to pay for non-economic damages only in proportion to the percentage of fault by which that defendant contributed to the accident.").

Whether the *Fabre* defense applies in this case is a particularly contentious issue for reasons related to both the unusual facts of this case and the scope of this Court's jurisdiction.  Plaintiffs seek derivative damages related to the death of Madison Miller, a resident of Ohio at the time she

died.  (*See* Doc. No. 8, filed Oct. 1, 2007.)  While vacationing in South Africa, the Miller family rented a car from a South African Thifty franchisee called Safy-Trust.  (Doc. No. 41 at 2-3.)  During the trip, the car's brake system allegedly seized, causing the car to veer off the road and flip over.  (*Id.*)  Madison Miller survived the initial accident but died when the helicopter that evacuated her from the scene crashed.  (*Id.*)  Following the accident, Plaintiffs moved to Florida and sued both Thrifty, a corporation whose principal place of business and site of incorporation is Oklahoma, (Doc. No. 48 ¶ 1, filed Dec. 27, 2007), and the car's alleged manufacturer, Toyota Motor Corporation ("TMC").  After jurisdictional discovery, the Court determined that it lacked personal jurisdiction over TMC, leaving only the claims against Thrifty.[2]  (Doc. No. 103, filed Oct. 6, 2008.)

Thrifty's Answer asserts an affirmative defense premised on *Fabre*.  (Doc. No. 48 ¶11.)  However, Thrifty did not specify the actual *Fabre* defendants in its Answer.  (*Id.*)  Instead, Thrifty stated it was undertaking a "reasonable investigation and discovery with this affirmative defense as the case proceeds."  (*Id.*)  Thrifty has since moved the Court to allow it to amend the Answer and incorporate twelve specific non-party defendants.  (Doc. No. 109; Doc. No. 166; Doc. No. 166-2.)  These proposed *Fabre* defendants include the "Toyota corporate entity" responsible for the "manufacturing" and "sale" of the car involved in this accident, the helicopter operator, the helicopter manufacturer, and South Africa's civil aviation agency.[3]  (*Id.*)

---

[2]        "John Doe" manufacturer was named as a defendant in the Amended Complaint, but Plaintiffs have not served this party or determined its identity.  (*See* Doc. No. 8, filed Oct. 1, 2007.)

[3]        Plaintiffs object to the application of the *Fabre* defense on grounds that is inapplicable to this case even under Florida law.  (Doc. No. 108.)  They argue that Florida courts have drawn a distinction between concurrent tortfeasors, to which the *Fabre* defense applies, and successive tortfeasors, to which the *Fabre* defense does not apply.  (*Id.* at 3-8.)  For purposes of determining the applicable source of law, the Court will assume without deciding that at least some of the proposed *Fabre* defendants fall under the category of concurrent tortfeasors, and thus the
(continued...)

Thrifty, while relying on *Fabre* as an affirmative defense, also contends that South African tort law controls certain aspects of this case. (Doc. No. 112 at 1-3.) According to Thrifty, "Florida has no significant relationship to this lawsuit." (*Id.* at 2.) Thrifty asserts that it has been advised that "the law of South Africa is significantly different than the law of the state of Florida, particularly with regard to a [w]rongful [d]eath claim." (*Id.*) In particular, Thrifty wishes to avail itself of limitations that South Africa law purportedly places on the damages recoverable by parents for the loss of a child. (*Id.*)

On January 12, 2009, the Court issued an Order requiring the parties to submit briefs identifying the body of law that governs the apportionment of liability in this case. (Doc. No. 121.) The Court noted that *Fabre* is a matter of Florida law, and if South Africa law controls the issue of damages in this case, as Thrifty contends, it would be unlikely that Florida rules governing the apportionment of liability also apply. (Doc. No. 121 at 2 (citing *Connell v. Riggins*, 944 So.2d 1174, 1180 (Fla. 1st DCA 2006) (determining that Georgia law governed the issue of fault apportionment in a tort case arising out of a car accident that occurred in Georgia)).)

In response to this Order, Thrifty now contends that South Africa law controls the issue of liability apportionment.[4] (Doc. No. 130.) Plaintiffs, by contrast, contend that the law of Oklahoma, the state where Thrifty has its principal place of business, controls the apportionment of liability.

---

[3](...continued)
*Fabre* defense could potentially apply to this case.

[4]        Thrifty has also filed a Motion asking the Court to "apply the law of South Africa," though it is unclear whether the scope of this request relates to the issue of liability apportionment or extends to all issues in this litigation. (*See* Doc. No. 130.) The Court will consider the arguments made in this Motion to the extent they concern the issue of apportionment of liability. The request to apply South Africa law to the remainder of issues in this case is addressed later in this Order.

(Doc. No. 154 at 1.)  They also identify Ohio as an additional state with a potential interest in this litigation.  (*Id.* at 13.)  Neither party appears to contend that Florida's law is controlling on this issue.

## II.    Laws of the Various Jurisdictions[5]

### A.    South Africa Law

The Republic of South Africa possesses a single, centralized judiciary system.[6]  Francois du Bois & Daniel Visser, *The Influence of Foreign Law in South Africa*, 13 Transnat'l L. & Contemp. Probs. 593, 610 (2003); Central Intelligence Agency, *The World Factbook, South Africa* (2009), *available at* https://www.cia.gov/library/publications/the-world-factbook/geos/sf.html.  The original Dutch settlers of South Africa instituted a civil law system based on Roman-Dutch law, which itself is a combination of Germanic, Dutch, and ancient Roman legal principles.  du Bois & Visser, *supra*, at 611.  During the Nineteenth Century, the colony came under the control of the British, who put in place a common law legal system based on a framework of judicial precedents and narrowly construed statutes.  *Id.* at 610.  Today, the South African legal system is considered a "mixed" system of common and civil law, somewhat similar in operation to several other former British colonies and the state of Louisiana.  *See id.*; *see also* JuriGlobe, *World Legal Systems*, http://www.juriglobe.ca/eng/index.php (last visited Apr. 2, 2009).  The specific area of tort law in South Africa is labeled the law of *delict* and is derived from the *lex aqulia*, a Roman text governing

---

[5]    In federal practice, proof of foreign law is governed by Federal Rule of Civil Procedure 44.1.  That rule allows the court to consult any "relevant material or source" regardless of admissibility under the Federal Rules of Evidence.  *Id.*  The court's selection of law is treated as a ruling on a question of law.  *Id.*

[6]    By contrast, the United States is a federated republic with separate state and federal judicial systems.  Central Intelligence Agency, *The World Fact Book, United States* (2009), *available at* https://www.cia.gov/library/publications/the-world-factbook/geos/us.html.

legal wrongs.  (Doc. No. 130 at 12-18); Black's Law Dictionary 927 (8th ed. 2004).  As a general matter, "negligence" under the modern interpretation of the *lex aquila* is relatively similar to the Anglo-American formulation. (*See* Doc. No. 130 at 12-18.)

The South African government has legislated on the specific issue of liability apportionment. Under the Apportionment of Damages Act ("ADA") 34 of 1956 (BSRSA), South Africa adopted a system of traditional joint and several liability with some modifications.  (Doc. No. 129 at 4-7; Doc. No. 154 at 10-11.)  The most pertinent modification is that courts are permitted, when appropriate, to apportion liability between named defendants who are found liable to the plaintiff. ADA, ch. 2, § 8(a).  As a related matter, the Act creates a system for defendants to implead other wrongdoers and potentially apportion liability to them.  *Id.* ch. 2, § 2(b).  The Act also instructs courts to reduce a plaintiff's recovery by the degree to which the plaintiff was responsible for his or her own injury, *id.* ch. 1, § 1, a system termed "comparative negligence" in American parlance. The Act does not recognize a method for apportioning liability to non-parties.

**B.      Oklahoma Law**

Oklahoma has adopted the doctrine of modified comparative negligence.  Unlike South Africa law, Oklahoma law bars a claimant's action if his negligence exceeds the combined negligence of all defendants.  Okla. Stat. Ann. tit. 23, § 13 (West 2008).  However, like South Africa law, the claimant's recovery is also reduced by the degree to which the claimant is responsible for his own injury.  *Id.* § 14; *Smith v. Jenkins*, 873 P.2d 1044, 1044 (Okla. 1994).  In *Paul v. N. L. Industries, Inc.*, 624 P.2d 68, 69 (Okla. 1980), the Oklahoma Supreme Court interpreted the state's comparative negligence statute as grounds to permit defendants to assign blame to non-party "ghost" tortfeasors.  Oklahoma's legislature later codified this joint-and-several-liability rule in 2004 by

providing that "liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor." Okla. Stat. Ann. tit. 23, § 15. However, the statute provides that a defendant will be held jointly and severally liable where the defendant's share of fault is greater than fifty percent, *id.* § 15(B), or where the defendant acted with "willful and wanton conduct," *id.* § 15(C). Further, a defendant will be jointly and severally liable when the plaintiff's percentage of fault is zero. *In re Adoption of 2008 Revisions to Okla. Jury Instructions*, — P.3d — , No. SCAD-2008-77, 2008 WL 4570620, at *15 (Okla. Oct. 14, 2008). Oklahoma's system apparently allows a defendant to shift tort liability to non-party tortfeasors; however, the statute does not delineate a procedure for doing so.[7] *See* 9 Oklahoma Practice Series § 7:8 (2008).

### C.    Ohio Law

Under Ohio law, tort liability was previously governed by the doctrine of contributory negligence. The rule held that a plaintiff was barred from recovery if the plaintiff's own negligence "concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof and as an element without which the injury would not have occurred." *BP Exploration & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 943 (6th Cir. 2002) (citing *Crawford v. Halkovics*, 438 N.E.2d 890, 893 (Ohio 1982)). The state legislature eventually enacted a statutorily modified comparative negligence scheme that bars a plaintiff's right of recovery when the plaintiff's negligence is greater than the combined negligence of the parties and non-parties that caused the plaintiff's injury. Ohio Rev. Code Ann. § 2315.35 (West 2008). Like Oklahoma and South African

---

[7]    Plaintiffs imply that Oklahoma retains traditional joint and several liability, and they assert that "Oklahoma law does not provide a defendant with the option of apportioning liability to a non-defendant." (Doc. No. 154 at 7-8.) Both of these assertions are a misstatement of the law.

law, the plaintiff's damages are also reduced by the degree to which the plaintiff is at fault for his own injury. *Id.* Also similar to Oklahoma law, when two or more defendants are responsible for the tortious conduct that injured the plaintiff, any one defendant who is more than fifty percent liable for the tortious conduct "shall be jointly and severally liable in tort for all compensatory damages . . . ." *Id.* § 2307.22(A)(1). The remaining named defendants are responsible for only their proportional share of liability. *Id.* § 2307.22(A)(2). Thus, a defendant can, in theory, reduce its liability by shifting blame onto non-party tortfeasors. *See id.* That said, similar to Oklahoma, the statute does not delineate as a matter of procedure how a defendant would accomplish this task.[8]

### D. Florida Law

Florida law currently recognizes a "pure comparative negligence" system, meaning that a jury should apportion fault between the plaintiffs, defendant, and any non-party tortfeasors. *Williams v. Davis*, 974 So. 2d 1052, 1061 n.10 (Fla. 2007); *Hoffman v. Jones*, 280 So. 2d 431, 438 (Fla. 1973). In this sense, Florida's system is similar to Oklahoma's and Ohio's systems, except that a plaintiff cannot be barred from recovery for being more than fifty percent at fault, and a defendant cannot be made jointly and severally liable for being more than fifty percent at fault. This system arose through a combination of judicial rulings and statutes. Florida originally recognized a contributory negligence system, but in 1973 the Florida Supreme Court adopted a comparative negligence scheme in which a plaintiff's damages are reduced by the degree to which they were caused by the plaintiff's own negligence. *Hoffman*, 280 So. 2d at 438. That ruling was thereafter

---

[8]     Further, the Court has not located any cases where this apportionment actually occurred. However, Plaintiffs appear to concede that this method of fault apportionment is permitted by Ohio law. (Doc. No. 154 at 10 ("The Ohio Revised Code does, however, provide any defendant with the option of apportioning fault for the tortious conduct to a *Fabre*-style defendant.").)

codified by statute in section 768.81(3) of the Florida Statutes. Later, in *Fabre*, the Florida Supreme

Court interpreted section 768.81(3) as dispensing with the concept of joint and several liability in

favor of a system where defendants are liable only according to their percentage of fault for the

plaintiff's injury. *Fabre*, 623 So. 2d at 1185. In turn, the legislature codified this interpretation of

Section 768.81(3). In its current form, section 768.81(3) reads as follows:

> (3) Apportionment of damages.-- In cases to which this section applies, the court
> shall enter judgment against each party liable on the basis of such party's percentage
> of fault and not on the basis of the doctrine of joint and several liability.
>
> > (a) In order to allocate any or all fault to a nonparty, a defendant must
> > affirmatively plead the fault of a nonparty and, absent a showing of good
> > cause, identify the nonparty, if known, or describe the nonparty as
> > specifically as practicable, either by motion or in the initial responsive
> > pleading when defenses are first presented, subject to amendment any time
> > before trial in accordance with the Florida Rules of Civil Procedure.
> >
> > (b) In order to allocate any or all fault to a nonparty and include the named
> > or unnamed nonparty on the verdict form for purposes of apportioning
> > damages, a defendant must prove at trial, by a preponderance of the evidence,
> > the fault of the nonparty in causing the plaintiff's injuries.

### Analysis

**I.      Choice of Law Concerning the Apportionment of Liability to Non-Parties**

A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state.

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Grupa Televisa, S.A. v. Telemundo

Commc'ns*, 485 F.3d 1233, 1240 (11th Cir. 2007); *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d

1272, 1296-97 (11th Cir. 1999). "As a preliminary matter, the court must characterize the legal

issue and determine whether it sounds in torts, contracts, property law, etc. Once it has characterized

the legal issue, it determines the choice of law rule that the forum state applies to that particular type

of issue." *Grupa Televisa, S.A.*, 485 F.3d at 1240 (citing *Acme Circus Operating Co., Inc. v.*

*Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983)).

**A.      True or False Conflict**

Before beginning a choice of law analysis, a court should determine whether a conflict of laws truly exists. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 & n.21 (11th Cir. 1995); *Federacion Nacional Autonoma de Futbol de Honduras v. Traffic Sports USA, Inc.*, No. 08-21505-MC, 2008 WL 4056295, at *3 (S.D. Fla. Aug. 29, 2008) (citing *Tune v. Phillip Morris, Inc.*, 766 So.2d 350, 352 (Fla. 2d DCA 2000)).  A "false conflict" between laws can exist: (1) where the laws of the different sovereigns are the same; (2) where the laws of the different sovereigns are different but would produce the same outcome under the facts of the case; or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws. *Tune*, 766 So.2d at 352 (citing *Greaves v. State Farm Ins. Co.*, 984 F. Supp. 12, 14 (D.D.C. 1997)).  In contrast, a true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result. *Id.*  For purposes of this analysis, the general policies implicated by tort law are deterring tortious behavior and ensuring compensation for tort victims. Restatement (Second) of Conflicts of Law § 145 cmt. b.[9]  Jurisdictions may balance these concerns with the competing policies of encouraging investment and protecting defendants from excessive tort judgments. *See Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1570 (11th Cir. 1990).

In *Judge*, 908 F.2d at 1567-73, the Eleventh Circuit provided some general guidance on determining the interests of various sovereigns in applying their laws.  In that case, two Florida

---

[9]      The Restatement (Second) of Conflicts of Law will be referred to as the "Restatement (Second)" in textual sentences.

tourists were killed due to an alleged defect in their rental car while vacationing in Mexico, and the issue before the court was whether to apply Mexico's prohibition on claims for wrongful death. *See id.* Citing *Reich v. Purcell*, 432 P.2d 727, 727 (1967), and Bernard Currie, *Selected Essays on the Conflict of Laws* 704 (1963), the court distinguished between "conduct-regulation" rules that prescribe substantive standards for people to observe, such as a "rule of the road," and "loss-distribution" rules that prescribe how liability is to be apportioned in a legal action, such as a limitation on damages. *Judge*, 908 F.3d at 1572 & n.9. The court explained that a sovereign's interest in applying a "loss-distribution" rule turns not on the site of the incident but on the people involved in the incident. *Id.* at 1572 n.9. When neither the plaintiff nor the defendant are residents of the jurisdiction in which the accident occurred, the jurisdiction lacks an interest in seeing that the plaintiff is properly compensated or that the defendant is protected from excessive tort judgments. *Id.* at 1572-73. The court noted that a sovereign such as Mexico might have an interest in encouraging investment from non-resident corporations, like a car rental company, but it concluded that such an assumption is "too strained" to merit weight unless supported by actual evidence in the record. *Id.* at 1573; *see also Grupo Televisa, S.A.*, 485 F.3d at 1246.

### 1. Florida Law

Under the principles articulated in *Judge* and the Restatement (Second), Florida has no interest in having the *Fabre* defense applied. The only relationship Florida has with this litigation is that several of the Plaintiffs moved to Florida following the accident, and Florida is the state in which this Court is located. However, even assuming Plaintiffs' post-accident move implicates Florida's interest in compensating tort victims, the policy behind the *Fabre* rule not implicated. When the defendant fails to shift liability to a non-party tortfeasor, a plaintiff subject to the *Fabre*

rule is limited to the same damages provided by the joint-and-several-liability rule. When the defendant succeeds in shifting liability to a non-party tortfeasor, the plaintiff will receive less compensation than under the joint-and-several-liability rule. Thus, the policy behind this rule is to protect defendants and potentially reduce insurance premiums by limiting excessive tort judgments: interests that are implicated when the defendant is a resident of the jurisdiction. *Judge*, 908 F.3d at 1572-73 & n.9; *see also Erny v. Estate of Merola*, 792 A.2d 1208, 1216-21 (N.J. 2002) (concluding that New Jersey's interest in protecting defendants from full joint and several liability was not implicated when the defendant was from New York); *Farrell v. David Davis Enters., Inc.*, No. Civ. A. 95-2986, 1996 WL 21128, at *3 (E.D. Pa. Jan. 19, 1996) (false conflict existed between New Jersey's law limiting joint and several liability and Pennsylvania's law permitting full joint and several liability because New Jersey had no interest in limiting a Pennsylvania defendant's tort liability). Because Thrifty resides in Oklahoma, Florida lacks an interest in applying the *Fabre* rule, and Florida's interests would not be frustrated by the application of another jurisdiction's law. *Erny*, 792 A.2d at 1216-21; *Farrell*, 1996 WL 21128, at *3.

## 2. Ohio Law

Like Florida law, Ohio law permits defendants, in some instances, to shift liability to non-parties. And like Florida, Ohio lacks an interest in having this rule applied. The Ohio system makes a defendant who is found to be more than fifty percent at fault jointly and severally liable for the plaintiff's injury. Ohio Rev. Code Ann. § 2307.22(A)(1). Defendants who are found between one to fifty percent at fault are liable according to their percentage of fault. *Id.* § 2307.22(A)(3). Compared to Florida law, this system is slightly more skewed in favor of compensating plaintiffs, since a plaintiff will recover his or her full damages whenever a defendant is found to more than fifty

percent at fault. However, compared to the more traditional joint and several liability system of South Africa, the balance struck by the Ohio rule favors the policy of protecting defendants from excessive tort judgments. Further, Ohio has the same rules governing apportionment of liability to non-parties as Oklahoma. Because Thrifty is a resident of Oklahoma, and not a resident of Ohio, Ohio's interests in protecting defendants from excessive liability would not be furthered by the application of its law. *Judge*, 908 F.2d at 1572-73. So long as Florida's law is not applied, Ohio's interest in providing full recovery to a plaintiff when a tortfeasor is more than fifty percent at fault will not be frustrated by the application of South Africa's or Oklahoma's law. *Erny*, 792 A.2d at 1216-21; *Farrell*, 1996 WL 21128, at *3. Accordingly, Ohio has no interest in having its law applied under the facts of this case.

### 3. South African Law

On first blush, the Eleventh Circuit's reasoning in *Judge* appears to dictate that South Africa has no interest in having its law applied. There, the Eleventh Circuit explained that a jurisdiction's "loss-distribution" rules are generally not implicated when an accident between two nonresidents occurs in the jurisdiction. The manner in which fault is allocated between defendants is a "loss-distribution" rule because it prescribes how fault, and thus responsibility for damages, is allocated post-accident. *Riech*, 432 P.2d at 731. However, the *Judge* court came to this conclusion while evaluating the strength of Mexico's interests under the "most significant relationship" test of section 6 of the Restatement (Second). Before reaching that point, the court explained that Mexico had at least some interest in the litigation by "virtue of its being the place where the injury occurred and the place where the relationship between the parties is centered." *Judge*, 908 F.2d at 1569.

Although the *Judge* court did not engage in a false conflicts analysis, this reasoning indicates that the court would have identified Mexico as an interested jurisdiction for false conflicts purposes.

Further, the "loss-distribution" label is not dispositive of a jurisdiction's interest, and there is an important difference between this case and *Judge*. Unlike Mexico's *non-recognition* of a wrongful death action, South Africa's *recognition* of joint and several liability implicates the jurisdiction's interest in generally deterring tortious conduct within its borders. *See Judge*, 908 F.2d at 1570 (noting that a jurisdiction's allowance of wrongful death damages, and hence greater tort liability, reflects a desire "to regulate and deter dangerous conduct that occurs in the state"). Although the joint-and-several-liability rule does not prescribe substantive standards for governing behavior, such as a rule of the road, it does make tortious behavior much more costly. *Walt Disney World Co v. Wood*, 515 So.2d 198, 201 (Fla. 1987) (declining, pre-*Fabre*, to abrogate joint and several liability; upholding the joint and several liability of a defendant that was only one percent at fault); *see also Grupo Televisa, S.A.*, 485 F.3d at 1246 (concluding that a jurisdiction's allowance of punitive damages regulated conduct "on some level" by punishing wrongdoers). Further, section 172 of the Restatement (Second) explains that the applicable law for issues related to liability for "joint torts" is usually "the local law of the state where the injury occurred." It is unlikely that a jurisdiction's law could be chosen under the "most significant relationship" analysis unless that jurisdiction has at least a minimal interest in applying its law. *See* Restatement (Second) of Conflicts of Law § 172 cmt. b, illus. 1. Thus, South Africa's recognition of joint and several liability implicates, at the very least, a modest interest in deterring tortious conduct within its borders.

In addition, at least two Florida District Courts of Appeal have selected the law of the accident site to govern various issues with respect to car accidents that have occurred in other

jurisdictions; however, reference to these cases must be with the caveat that neither applied a false conflicts analysis nor gave much elaboration of the analysis adopted in the case. In *Avis Rent-A-Car Sys., Inc. v. Abrahantes*, 517 So. 2d 25, 27 (Fla. 3d DCA 1987), four Floridians were injured in a rental car accident while vacationing in the Cayman Islands. Like the plaintiffs in this case, they sued an American rental car company that was associated with the Cayman rental agency. *Id.* at 26. Observing that nearly every fact relevant to the case arose in the Cayman Islands, the court concluded that "Cayman law was applicable to the cause of action which was being tried [in Florida]." *Id.* at 27. The court apparently reached its conclusion under the "most significant relationship" test, but it gave no further explanation of its reasoning, nor did it identify the particular tort rules to which it was applying the test. *See id.*

In *Connell*, 944 So. 2d at 1177, the First District Court of Appeal found that Georgia's modified comparative negligence scheme, which bars recovery against a defendant who is less negligent than the plaintiff, applied in lieu of Florida's pure comparative negligence scheme. The accident in *Connell* occurred in Georgia between a Florida defendant and a Georgia plaintiff. *Id.* at 1180. The court determined that all of the case's contacts, with the exception of the forum and the defendant's residence in Florida, were associated with Georgia. *Id.* at 1180. Similar to *Abrahantes*, the court then concluded in one sentence that Florida law should apply. *Id.* ("Having carefully considered the myriad factors and underlying policies in the Restatement (Second) of Conflict of Laws (1971), sections 6, 145, and 146, we conclude that the trial court reversibly erred by applying Florida law to the issues of negligence and damages in this case."). Though *Abrahantes* and *Connell* provide little substantive guidance on Florida's choice of law rules, the outcome in

these cases strengthens the Court's conclusion that South Africa has at least some interest in applying its joint-and-several-liability rule.

### 4. Oklahoma Law

Oklahoma joins South Africa in possessing an interest in applying its law. Thrifty is a resident of Oklahoma, and Oklahoma therefore has an interest in governing the allocation of liability to a resident corporation. *Judge*, 908 F.2d at 1570-71; *see also Dale v. Ala Acquisitions I, Inc.*, 434 F. Supp. 2d 423, 435 (S.D. Miss. 2006) ("Of particular importance where the issue is allocation of fault is the domicile of the party whose liability is at issue, because that state's laws both bear on that party's expectations and the state's interest in deterrence."). Relative to South Africa's traditional joint and several liability, Oklahoma's rule allowing a tortfeasor who is less than fifty-one percent at fault to escape joint and several liability evinces a policy of protecting resident tortfeasors from excessive tort liability. Accordingly, its policy would be frustrated by the application of South Africa law, and a true conflict exists between the law of Oklahoma and the law of South Africa. The Court must now determine which jurisdiction has the most significant relationship to this issue.

### B. The Most Significant Relationship

Florida resolves conflict-of-laws questions according to the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. *Id.* (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980)). Two related provisions of the Restatement (Second) apply in tort cases. *Id.* A court first examines the "General [Tort] Principle" in section 145 and then uses that analysis to "inform" the court as it applies the general choice of law principles under section 6. *Id.* Section 145(2) lists four contacts which a court should consider when applying the principles of section 6: "(a) the place where the injury occurred; (b) the place where the conduct

causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place

of business of the parties, and (d) the place where the relationship, if any, between the parties is

centered." The Eleventh Circuit has explained that a court "cannot simply add up the factors

delineated in section 145(2) and then apply the law of the sovereign with the greatest numerical

total." *Judge*, 908 F.2d at 1569. Rather, the Court must keep these contacts in mind when

determining which sovereign has the greatest connection to the factors listed in section 6. *Id.* Thus,

even though section 145 is the Court's starting point, the analysis does not begin in earnest until the

section 6 analysis.

Section 6 lists six "factors relevant to the choice of the applicable rule of law":

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those
    states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Where a "personal injury" is involved, section 146 of the Restatement (Second) presumes that the

local law of the state in which the injury occurred will apply, unless "some other state has a more

significant relationship under the principles stated in [section] 6 to the occurrence and the parties."

The Eleventh Circuit explained in *Judge* that:

The section 6(2) analysis turns in large part on the balance of competing
interests contemplated by sections 6(2)(b) and 6(2)(c). To perform this analysis, the
court must first identify the particular rule of law sought to be applied by each
interested state. The court must then identify the purposes or policies which underlie
each state's rule of law.

In the final step of the section 6(2)(b)-6(2)(c) analysis, the court must assess
the degree to which the purposes underlying each rule would be furthered by the
rule's application. As a general proposition, it is fitting that the state whose interests
are most deeply affected should have its local law applied.

*Judge*, 908 F.2d at 1569-70 (internal quotation marks, citations omitted).  In addition, the *Judge*

court explained that subsections (a) and (f) were of some importance in tort cases.  *Id.* at 1573-75.

In contrast, subsections (d) and (g) are relatively unimportant in tort cases because they primarily

concern voluntary transactions.  *See id.*; Restatement (Second) of Conflicts of Law § 145 cmt. b

(explaining that the expectations of the parties and ease of determining the applicable law are more

important in the fields of contracts, property, and wills).

### 1.    Subsections (b) and (c)

The Court has already identified the relevant policies at stake during the false conflicts

analysis.  Through its adoption of joint and several liability with no opportunity to shift blame to

non-parties, South Africa has expressed a modest interest in generally deterring tortious conduct

within its borders by making tort liability relatively expensive.  In contrast, by allowing tortfeasors

who are less than fifty-one percent at fault to shift liability to a non-party, Oklahoma has expressed

an interest in encouraging socially useful enterprise by protecting defendants from excessive

liability.  South Africa's policy would be frustrated by the application of Oklahoma law and vice

versa.

The contacts delineated by section 145 provide some guidance on determining which

jurisdiction's interests are greater.  Essentially, section 145 can serve as a tiebreaker when choosing

between the competing policies of two jurisdictions.  *See O'Connor v. O'Connor*, 519 A.2d 13, 23

(Conn. 1986) (to resolve a "standoff" between interested states, a court refers to relevant factors set

forth in section 145(2)), *quoted in Judge*, 908 F.2d at 1569.  In this case, the place where the injury

occurred is South Africa.  Given that the Plaintiffs allege a mechanical malfunction with the rental

car, the place where the negligent conduct occurred is most likely South Africa; however, plaintiffs

also argue that negligent manufacturing of the rental vehicle could have occurred in Japan. (*See* Doc. No. 154 at 15.) Plaintiffs' domicile at the time of the accident was Ohio, and their current domicile appears to be Florida. Thrifty's residency is in Oklahoma. The place of the relationship between the parties, if any, is most fairly characterized as South Africa, because this is the location where Plaintiffs agreed to rent the car. *Judge*, 908 F.2d at 1569.

When relevance is considered, however, section 145 points toward Oklahoma. Though South Africa prevails in terms of numerosity, its contacts are not directly related to the legal rule at issue. Restatement (Second) of Conflicts of Law § 145 ("These contacts are to be evaluated according to their relative importance with respect to the particular issue."). Notably, the place of the injury, the place of the alleged conduct, and the place of the relationship are all relevant to a "conduct-regulation" rule. *Judge*, 908 F.2d at 1571-72 & n.9. The recognition of full joint and several liability can function to deter tortious conduct, but the Restatement (Second) explains that all tort rules serve this purpose to some extent. Restatement (Second) Conflicts of Law § 145 cmt. c. By contrast, Thrifty's residency in Oklahoma directly implicates the jurisdiction's "loss-distribution" interests of limiting Thrifty's liability should the corporation be deemed between one and fifty percent liable for Plaintiffs' injuries. Thus, because a "loss-distribution" rule is at issue, and South Africa's contacts would be most relevant to a "conduct-regulation" rule, Oklahoma's contacts for this particular legal issue are the strongest under section 145. *Judge*, 908 F.2d at 1571-73.

Of course, this conclusion is contradicted to some extent by the Florida District Court of Appeal cases of *Abrahantes* and *Connell*. As previously explained, the courts' analysis in these cases suggest that South Africa has an interest in applying its joint and several liability rule to this

litigation. Though neither case featured a detailed application of the section 6 factors, both cases chose the law of the jurisdiction with the most numerous contacts to the litigation, an approach explicitly rejected by the Eleventh Circuit. *Judge*, 908 F.2d at 1569 ("To discharge this task, we cannot simply add up the factors delineated in section 145(2) and then apply the law of the sovereign with the greatest numerical total."). Further, both cases reflect Florida's presumption that the laws of the accident site will typically control. *Abrahantes*, 517 So. 2d at 27; *Connell*, 944 So. 2d at 1177. However, the Court's ultimate task is to determine how the Florida Supreme Court would rule on this particular issue. In this sense, the Eleventh Circuit's very detailed analysis in *Judge* provides the best guide.

Further, while federal courts interpreting Florida law must look to the decisions of Florida's intermediate appellate courts absent direct guidance by the Florida Supreme Court, *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 774-75 (11th Cir. 2000), district courts are bound by their governing appellate court's construction of state law unless "later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error." *Stepanuk v. State Farm Mut. Auto. Ins. Co.*, No. CIV. A. 92-6095, 1995 WL 553010, at *2 (E.D. Pa. Sept. 19, 1995). The relevant state court decisions do not cast doubt on the Eleventh Circuit's reasoning in *Judge*. The Third District Court of Appeal decided *Abrahantes* in 1987, and the Eleventh Circuit decided *Judge* in 1990.[10]

---

[10] In a footnote, the *Judge* court distinguished *Abrahantes* as a case where the negligent maintenance of the rental vehicle occurred in the foreign jurisdiction, thus implicating that jurisdiction's interest in deterring tortious conduct. *Judge*, 907 F.2d at 1571 n.7. However, it is questionable whether the two cases can be reconciled on that basis. The distinction was irrelevant under the *Judge* court's own reasoning because the Mexican rule of law at issue in *Judge* did not govern the standard by which an actor is deemed negligent. Thus, even assuming the negligence in *Judge* occurred in Mexico, the *Judge* court's reasoning would still dictate that Mexico lacked an interest in applying its "loss-distribution" rule. *Judge*, 908 F.2s at 1571-72. Further, it is unclear

(continued...)

*Abrahantes*, 517 So. 2d at 25; *Judge*, 908 F.2d at 1565.  Although *Connell* was decided in 2006, the

Eleventh Circuit reaffirmed the reasoning of *Judge* in *Grupa Televisa, S.A.*, decided in 2007.

*Connell*, 944 So. 2d at 1174; *Grupa Televisa, S.A.*, 485 F.3d at 1233.  Thus, the Eleventh Circuit was

the last to speak on this issue, and this Court will follow its interpretation of Florida choice of law

principles.

### 2.    The Remaining Section 6 Factors

The Eleventh Circuit has explained that the "foremost" of the remaining factors is subsection

(a), "the needs of the interstate and international systems."   In *Judge*, the court interpreted this

somewhat opaque language as meaning the preservation of international commerce.  *Judge*, 908 F.2d

at 1574.  In that case, the Eleventh Circuit concluded that "international considerations" were not

heavily implicated by the facts of the case, and the Court comes to the same conclusion here.

Should the Court apply South Africa's law, Thrifty would be subject to the same joint-and-several-

liability rule to which it might be subject in numerous American jurisdictions, for instance the

Commonwealth of Virginia.  *See* Va. Code Ann. § 8.01-443 (2009) (retaining the common law rule).

Likewise, although the application of Oklahoma's  law could lessen the deterrence of tortious

conduct within South Africa's borders, Thrifty can still be held liable for damages, and South Africa

has other administrative and criminal institutions to encourage road safety.  Thus, the Court cannot

foresee international ramifications arising from the application of either rule.

Subsection (f), instructing courts to apply the law which will foster "certainty, predictability

and uniformity of result," appears to favor South Africa.  In *Judge*, the Eleventh Circuit explained

---

[10](...continued)
why Mexico would lack a deterrent interest where the negligence occurs abroad but causes an injury
on Mexico's roads.

that this factor "plausibly" favored Mexico because the crash occurred there.  *Judge*, 908 F.2d at 1574.  The court ultimately disregarded this factor because the "equitable interest in avoiding Mexico's complete prohibition [was] at least as important as the institutional interest in promoting predictability and uniformity."  *Id.*  In this case, South Africa's law is actually more generous on this particular issue to Plaintiffs than Oklahoma law, suggesting that harshness is not a concern.  Thus, subsection (f) favors South Africa to some degree.  Nevertheless, this factor cannot be afforded too much weight.  In *Grupo Televisa, S.A.*, 485 F.3d at 1245, the Eleventh Circuit explained that subsection (f) is most important "in areas where the parties are likely to give advance thought to the legal consequences of their transactions."  Some aspects of this case involve "advance thought," such as the degree to which Thrifty manages its South African franchisee, but the dispute itself involves allegations of negligence rather than the breakdown of a voluntary transaction.

The final factor, "ease in the determination and application of the law to be applied," modestly favors Oklahoma law.  Oklahoma is a common law jurisdiction whose legal precedents are easily accessible on traditional commercial databases such as Westlaw and Lexis-Nexis.  South Africa is a mixed jurisdiction with limited commercial database coverage.  *The Bluebook: A Uniform System of Citation* 310 tbl. T.2 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005).  Proof of South Africa law will have to be presented, in part, by the reports of experts.  Although South Africa's precedents are available in English and its judicial system is relatively similar to the Anglo-American system, Oklahoma law is easiest to determine and apply.

Accordingly, Oklahoma has the most significant interest in this issue according to the Restatement (Second).  *Judge*, 908 F.2d at 1575.  Thrifty may maintain a *Fabre*-style defense to the extent such a defense is available under Oklahoma law.  The pending Motions specifically related

to the *Fabre* defense will be addressed below.

## II.     Thrifty's General Request to Apply South African Law

Thrifty asks the Court "to apply the law of South Africa," apparently requesting that the Court apply South African law to every issue before it. (Doc. No. 130 at 1-20.) Choice of law is decided on an issue-by-issue basis. Restatement (Second) of Conflict of Laws § 145(1). It would be inappropriate for the Court to prospectively declare that South African law applies to each and every issue in this case before the issues even arise. Every legal principle reflects a different balance of state policies, and no two laws would be subject to the exact same analysis under the Restatement's "most significant relationship" test. *See id.* § 145 cmt. c. ("[T]he interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties."). Accordingly, the Court will deny Thrifty's request without prejudice to its reassertion on an issue-by-issue basis. As a related note, the parties should make every effort to agree on what law governs the various issues in the case moving forward. This includes, if possible, a stipulation as to the governing law for the various issues that will arise at trial.

## IV.     Thrifty's Amended Answer

Thrifty filed an Amended Answer without leave of the Court. (Doc. No. 126.) Generally, a party may amend an answer within twenty days of its filing without obtaining leave of the Court or consent from the opposing party. Fed. R. Civ. P. 15(a)(1)(B). After that point, the party must obtain either leave of the court or consent from the opposing party before amending. *Id.* Thrifty did not obtain leave of this Court or consent from Plaintiffs.

Further, when a party asks to amend a pleading after the applicable scheduling order deadline

has passed, the party is in effect seeking to modify this deadline. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). Here, the Case Management and Scheduling Order set a deadline of June 13, 2008 for amended pleadings, (Doc. No. 51 at 1), and Thrifty filed its Amended Answer on January 23, 2009. Therefore, the applicable standard is found in Federal Rules of Civil Procedure 6 and 16 for the modification of deadlines. *Id.*

Federal Rule of Civil Procedure 6 requires a showing of "excusable neglect" for an extension of passed deadline. Fed. R. Civ. P. 6(b)(1)(B). Rule 16 concerns scheduling orders specifically and provides: "A [scheduling order] may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, when a party files a motion for leave to amend a pleading after the relevant scheduling order deadline has passed, the party must demonstrate both good cause and excusable neglect for the untimely motion. Fed. R. Civ. P. 6(b)(1)(B), 16(b)(4); *Sosa*, 133 F.3d at 1418-19 & n. 2. An untimely motion to amend a pleading is distinctly disfavored under the Local Rules of this District. *See* Local Rule 3.05(c)(2)(E). If Thrifty seeks leave to file an Amended Answer, it must meet this standard. It has failed to do so.

Accordingly, the Amended Answer will be stricken from the record.

## V. Thrifty's Requests to Amend its Answer to Add *Fabre* Defendants and Plaintiffs' Request to Strike Thrifty's Designation of *Fabre* Defendants

Thrifty's request to add *Fabre* defendants and Plaintiffs' request to strike Thrifty's designation of these defendants were based on the assumption that Florida law controlled the issue of fault apportionment to non-parties. Because Oklahoma law governs this issue, these Motions are now moot.

Under Oklahoma law, evidence of the negligence of non-party tortfeasors should be admitted by the trial court. *Paul*, 624 P.2d at 69-70; *see also Myers v. Mo. Pac. R. Co.*, 52 P.3d 1014, 1030

(Okla. 2002). The plaintiff bears the burden "to prove not only negligence on the part of the defendant, but also to prove non-negligence on the part of the third parties." *Paul*, 624 P.2d at 69-70. The court has not found any Oklahoma precedent requiring the defendant to plead the negligence of third parties as an affirmative defense as required under Florida law. Thus, to the extent Plaintiffs object to Thrifty's shifting of blame to non-parties, this objection is now an evidentiary matter rather than an objection to Thrifty's affirmative defenses. *See Paul*, 624 P.2d at 69-70. Plaintiffs may raise this objection in a motion *in limine* or through objection at trial.

### Conclusion

Based on the foregoing:

1.  The Motion of Plaintiffs to Strike the Notice of Designation of *Fabre* Defendants (Doc. No. 108, filed Dec. 5, 2008) is **DENIED as moot.** Plaintiffs may raise issues relating to the apportionment of fault to non-parties in a motion *in limine* or at trial.

2.  The Motion of Defendant Thrifty Rent-A-Car System, Inc. ("Thrifty") to Amend/Correct the Answer to the Complaint (Doc. No. 109, filed Dec. 15, 2008) is **DENIED as moot**.

3.  The Consent Motion of Plaintiffs for Leave to File Reply to Defendant's Opposition to Motion to Strike (Doc. No. 117, filed Dec. 23, 2008) is **DENIED as moot.**

4.  The Amended Answer and Affirmative Defenses of Defendant Thrifty (Doc. No. 126, filed Jan. 23, 2009) is **STRICKEN**.

5.  The Motion of Thrifty to Apply the Law of South Africa (Doc. No. 130, filed Jan. 26, 2009) is **DENIED without prejudice to its reassertion**, as stated in this Order.

6.  The Motion of Thrifty for Leave to File Reply to Plaintiffs' Response (Doc. No. 160, filed Feb. 27, 2009) is **DENIED as moot.**

7.    The Supplemental Motion of Thrifty for Leave to Amend Answer and Affirmative Defenses to Include *Fabre* Defendants Identified Through Recent Discovery (Doc. No. 166, filed Mar. 23, 2009) is **DENIED as moot.**

**DONE** and **ORDERED** in Chambers in Orlando Florida, on April 10, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record